Evan S. Strassberg (8279)
MICHAEL BEST & FRIEDRICH LLP
2750 E Cottonwood Pkwy., Suite 560
Cottonwood Heights, Utah 84121
Telephone: (801) 833-0500
Facsimile: (801) 931-2500
esstrassberg@michaelbest.com

James R. Lawrence, III (pro hac vice pending)
ENVISAGE LAW
2601 Oberlin Road, Suite 100
Raleigh, North Carolina 27608
Telephone:  (919) 755-1317
Facsimile:   (919) 782-0452
jlawrence@envisage.law

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH—CENTRAL DIVISION

| | |
|---|---|
| **ERIK FINMAN, an individual; and FREEDOM PHONE LIMITED COMPANY LLC, a Wyoming limited liability company, FKA FINMAN, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**CLEARCELLULAR, INC., a Utah corporation, and MICHAEL PROPER, an individual,**<br><br>Defendants. | **COMPLAINT** |

## INTRODUCTION

1. Erik Finman ("Erik") is an entrepreneur, innovator, and the creative force behind the FREEDOM PHONE, a new entrant into the consumer smartphone business. Erik launched the FREEDOM PHONE to great commercial success in the summer of 2021, but he ran into a problem. Expecting to quickly realize his hard-earned sales, payment processors refused to

release funds, even though Erik had personally guaranteed the accounts.

2. Trying to grow his business and meet the needs of consumers depending on him, Erik turned to ClearCellular, Inc. and its Chairman Michael Proper for help. Mr. Proper assured Erik that he and Clear had his back. Mr. Proper told Erik that he could count on Clear to help him get phones to the customers, and that the company had the capital and operational resources to not only sustain Erik's FREEDOM PHONE business but grow it further in the truth. Relying on Mr. Proper's representations, Erik and Clear entered a transaction in which Clear acquired the FREEDOM PHONE brand, related assets, and liabilities.

3. Soon after the deal closed, Erik learned that Clear was more a mirage than a stable business. Eager to get phones to the customers who ordered them, Erik asked Mr. Proper when phones would ship. Clear's initial promises of an imminent ship date soon slipped to October, November, and December 2021—until finally Clear shipped phones in February 2022, more than six months after the parties inked their deal. It turned out Clear was strapped for cash and the company could not manage its supply chain.

4. Meanwhile, consumers vented their frustrations online, directing their ire at Erik and his marketing partners, damaging his reputation. Mr. Proper declined to issue refunds to these irate consumers, largely content to sit on his hands and watch Erik's good name be ruined. FREEDOM PHONE was always about more than money to Erik, so he reached into his own pocket to issue refunds to many disappointed customers. In addition to stiffing customers, Clear also failed to pay FREEDOM PHONE vendors and marketing partners, which is another part of the operation Erik had to float on his own dime.

5. Throughout all of this, Mr. Proper's conduct was anything but proper. Mr. Proper declined to cooperate with Erik to transfer the merchant and bank accounts which Clear had

acquired, content to leave Erik as the personal guarantor. And instead of using funds released by payment processors to fill FREEDOM PHONE orders, Mr. Proper diverted them to other areas of the business and even to himself. The day one of the payment processors released more than $400,000 in funds, Mr. Proper celebrated with a $10,000 Costco shopping binge, taking home an assortment of flat screen TVs and other personal electronics. Clear could not pay its employees or pay Erik the salary and commissions he earned, but Mr. Proper could afford luxury cars, vacations, and other largesse. Erik also learned that Mr. Proper was not some captain of the mobile phone industry, but that Clear's Chairman had run other businesses aground, leaving employees and investors to pick through the wreckage.

6.     Erik started FREEDOM PHONE to serve others. Mr. Proper bought it to serve himself. With his trust and confidence in Clear and Mr. Proper shattered, Erik continued to manage the bank and merchant accounts with Defendants' knowledge. Because he had no confidence that Clear would pay employees and vendors, Erik distributed the payment processor proceeds to meet the company's obligations, including the commissions he was rightfully entitled to. Erik has nothing to hide, and he even produced an accounting to Defendants.

7.     Defendants have everything to hide. Erik cannot stand idly by while Defendants violate his rights and abuse the very customers who put their trust in him. Erik brings this action to hold Defendants accountable, defend his name and reputation, and take care of the very people who made FREEDOM PHONE a success in the first place.

## PARTIES, JURISDICTION, AND VENUE

8.     Erik is a resident of, and is domiciled in, the Commonwealth of Virginia.

9.     Freedom Phone Company Limited LLC ("FPCL") is a Wyoming limited liability company. Erik is the sole member of the LLC.

10. ClearCellular, Inc. ("Clear") is a corporation organized under the laws the State of Utah. Clear's principal place of business is in Utah County, Utah.

11. Michael Proper is the Chairman of Clear, a resident of Wasatch County, Utah, who upon information and belief resides in Midway, Utah.

12. Because they are residents of the State of Utah, this Court has general personal jurisdiction over Defendants, consistent with the U.S. Constitution and the Constitution of the State of Utah. This Court also has personal jurisdiction over Defendants under Utah Code § 78-27-22.

13. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because there is complete diversity of citizenship and more than $75,000 in controversy. Upon information and belief, Plaintiffs have suffered more than $10 million in damages on account of Defendants' actions.

14. Venue is appropriate in this case under 28 U.S.C. § 1391.

## BACKGROUND

**I.    Erik launches FREEDOM PHONE to great success, and then turns to Clear and Mr. Proper for assistance with growing the brand.**

15. Erik is an entrepreneur and innovator, and his American success story has been chronicled in outlets such as CNBC, *The Sun*, and others.

16. In 2020 and 2021, Erik increasingly saw that consumers wanted access to a smartphone that would put consumers in control of their own data and personal information instead of large technology companies. Erik invested substantial time, money, and other forms of capital into building an alternative, which he then launched in summer 2021 under the FREEDOM PHONE brand. Major national media outlets covered the launch.

17. Soon after the phone launched, Erik made thousands of sales to consumers eager

for an alternative. Many of these consumers used their credit cards to purchase the smartphones, and their payments went through payment processors. Instead of releasing the funds to Erik, the payment processors sat on millions of dollars in sales, on the grounds that, even though he had personally guaranteed the accounts, Erik's business lacked a sufficient credit history.

18. Blocked from his mission by the payment processors, Erik searched for alternative ways to meet the needs of the consumers relying on him. Erik had previously interviewed Mr. Proper as a supplier for FREEDOM PHONE. Soon after FREEDOM PHONE launched, Mr. Proper contacted Erik and offered to buy the business. Erik was upfront with Mr. Proper about the payment processing issue, and the parties worked on a deal.

19. Erik knew consumers were depending on him to fulfill orders, so the parties moved rapidly through diligence. During that process, Mr. Proper presented Clear as a sophisticated, established entity which could not only service the existing FREEDOM PHONE business, but would also provide Erik with a platform to build onto the brand in the future. Mr. Proper assured Erik that money would not be a problem. Mr. Proper boasted that he had access to a $100 million endowment from which he drew interest to help finance the company. Mr. Proper otherwise hailed Clear's financial stability, connections in the smartphone industry, and supply chain management.

20. Erik trusted in Mr. Proper's portrayals of his company, and the parties entered into a purchase agreement. The Agreement provided that Clear would acquire the FREEDOM PHONE brand, related assets, and liabilities. To Erik, the Agreement meant that he would deliver on getting FREEDOM PHONES to customers who put confidence in him. The Agreement also meant that Erik would finally be relieved of the financial burdens associated with the payment processors. Also critical to Erik was the fact that Clear would fulfill orders and pay his marketing

partners who had been instrumental in fueling the initial success of the brand.

21. The Agreement guaranteed Erik a $75 commission for all sales made after the deal closed on August 2, 2021. Erik and Clear also signed an Offer Letter under which Erik was appointed Clear's Chief Marketing Officer with an annual salary of $240,000 to be paid on a bi-monthly basis. The Offer Letter also promised Erik 37,500,000 Clear Tokens, the company's cryptocurrency.

## II. Clear and Mr. Proper break their promises to Erik, leaving FREEDOM PHONE consumers in the lurch.

22. After the deal closed, Erik turned his attention to serving as Chief Marketing Officer at Clear. Erik promptly got to work, putting Clear and Mr. Proper in touch with members of his marketing network, some of the most influential people in conservative politics, which comprised a substantial portion of Erik's consumer base.

23. While Erik worked on building the brand, in or around August 2021, Erik approached Mr. Proper about transferring the merchant and bank accounts associated with FREEDOM PHONE to Clear. Erik had every motivation to do so—again, his personal name and credit were tied to the accounts. Erik expected Mr. Proper would quickly agree to the transfer and that the two would work together to bring it to a close. Instead, Mr. Proper denied Erik's requests, leaving him to manage the accounts at Erik's own personal risk, while transferring sales to Clear as payment processors released funds from time to time. Erik also paid certain FREEDOM PHONE-related obligations from the accounts with no objection from Clear or Mr. Proper.

24. Erik was initially confused by Mr. Proper's unwillingness to transfer ownership of the accounts. As Mr. Proper often stated, Clear owned FREEDOM PHONE now. As 2021 progressed, Defendants' reasons became apparent. Even though consumers had placed orders for

FREEDOM PHONES months beforehand, Clear was not fulfilling the orders, as the company struggled to manage its supply chain. Unsurprisingly, consumers started canceling their orders, and the refunds and chargebacks accrued to the accounts which Clear had acquired, but that Erik was still personally guaranteeing. For Clear and Mr. Proper this was a classic "have your cake and eat it too" scenario—Defendants could extract all the benefits of the accounts while leaving Erik with all the burdens.

25. Consumer complaints mounted. Angry customers and critics took to Twitter to deride FREEDOM PHONE as a "scam."

26. Erik was understandably concerned about what this backlash meant both for the FREEDOM PHONE brand and him personally. He asked Mr. Proper to issue refunds to these dissatisfied customers, but he refused. Disappointed by Mr. Proper's apparent lack of care for his own customers, Erik opened his own wallet, and personally issued more than $100,000 in refunds and payments to marketing partners.

27. As if this was not enough, other issues soon emerged. While Mr. Proper portrayed Clear as a stable, financially solvent business, Erik learned the company had major cash flow problems. With the transaction, Erik brought to Clear a team of dedicated shipping and operational professionals who helped him launch FREEDOM PHONE. These dedicated employees worked to field consumer inquiries and to work on shipping products out to customers. Erik learned that some of these dedicated professionals had not been paid for weeks on end if at all. Erik had to come up with money out of his own pocket to meet these needs. Mr. Proper branded those who left Clear after not getting paid as "quitters."

28. Erik's influencer network, a resource unique to him and critical for his future entrepreneurial endeavors, was also affected by Clear's money problems. Erik learned that many

of the influencers so critical to the success of the FREEDOM PHONE brand had, like his former employees, either been paid late or not paid at all. Eager to protect his reputation, Erik again opened his own wallet to pay these influencers, all of which was Clear's responsibility.

29. To add insult to injury, FREEDOM PHONE's marketing partners were themselves subjected to online abuse, with Twitter users accusing them of supporting a product that was a "scam" on account of Clear's failure to timely deliver the phones. While FREEDOM PHONE had critics at the outset, Clear's failures gave them ammunition to hound Erik's supporters. Clear's failures put these relationships Erik had worked hard to build at risk, limiting his ability to call on these partners for help for future ventures.

30. None of this seemed to faze Mr. Proper. While Clear failed to pay working-class employees, vendors, and marketing partners, Erik looked on as Mr. Proper booked expensive vacations. One day, after a payment processor released more than $400,000, Mr. Proper decided to go to Costco to celebrate. Erik watched as Clear's Chairman went on a personal shopping spree. Mr. Proper took home $10,000 in flat screen televisions, video games, and other personal electronics.

31. In December 2021, Clear's money problems hit home for Erik. The company missed its December 15 pay date, leaving Erik without his expected salary right before Christmas. Clear also failed to pay Erik the commissions he was entitled to under the Agreement.

32. Erik then learned of yet another issue. In the Agreement, as part of the transaction, Clear represented and warranted to Erik that the company was in good standing with the State of Utah. According to the Utah Secretary of State's Office, as shown below, that was false in August 2021 and it is false now.

> **CLEARCELLULAR, INC.**
>
> Entity Number: 11688234-0148
> Company Type: Corporation - Benefit Corporation
> Address: 2825 E COTTONWOOD PKWY #500/590 Salt Lake City, UT 84121
> State of Origin:
> Registered Agent: PHILIP G JONES
> Registered Agent Address:
> 2825 E COTTONWOOD PKWY #500/590
> Salt Lake City, UT 84121
>
> **Status: Expired**
>
> Status: Expired 🔴 as of 06/23/2021
> Status Description: Failure to File Renewal
> Employment Verification: Not Registered with Verify Utah
>
> **History**
>
> Registration Date: 03/04/2020
> Last Renewed: N/A
>
> **Additional Information**
>
> NAICS Code: 5173 NAICS Title: 5173-Telecommunications Resellers

33. Practically, what this meant for Erik, was that he was unknowingly serving as an officer of a company that was not in good standing under Utah law. So not only was Clear requiring him to continue personally guaranteeing the accounts, but Clear's mismanagement of its corporate affairs also meant that he could potentially face liability on account of the company's other conduct.

34. Erik informed Mr. Proper of Clear's lack of good standing via a letter dated March 16, 2022. To this day, Clear has not fixed the problem.

35. Erik learned that Mr. Proper had told other falsehoods. Mr. Proper's ClearCenter ClearOS purports to be a server operating system with more than 10 million instances. Erik found out that ClearOS supports just a fraction of that number, and Mr. Proper's estimates are off by orders of magnitude.

36. Erik also discovered Mr. Proper's connection to another failed startup venture. In April 2019, Clear acquired Daplie, "a personal home server offering security, privacy,

ownership, and control to consumers instead of forcing them to conform with the stipulations of Cloud providers." *ClearFoundation Acquires Daplie*, Apr. 3, 2019, https://www.prweb.com/releases/clearfoundation_acquires_daplie/prweb16212114.htm. Daplie previously raised more than $600,000 to develop its product, which it ultimately failed to deliver to the customers who helped launch it, even after Clear's acquisition. Angry customers posted negative feedback on Daplie's IndieGoGo page. One such review, from just four months ago, and more than two years after Clear acquired Daplie, is shown below.



Amir Tsaliah    4 months ago
Where are they located?
Did someone tried to reach them out at the office address?
It is so frustrating they took our money but didn't deliver any product
Maybe we can ask for a fraud investigation of the Interpol ?

### III. Clear demands access to the accounts, while violating Erik's other rights.

37. In late 2021 and early 2022, Mr. Proper became increasingly interested in the status of the bank and merchant accounts. Mr. Proper repeatedly demanded "access" to the accounts, meaning login credentials, while Clear still declined to take ownership of them. Erik's hesitancy to provide login credentials sprung from his concern about being a guarantor for the financial activities of a third party he could not control. At the same time, Clear's operational and financial failures, including its failure to pay Erik, as well as Mr. Proper's spending habits seeded significant distrust.

38. Erik engaged an accountant to provide Mr. Proper with a detailed breakdown of the various payments into and out of the accounts at issue. Erik provided a breakdown of that analysis on March 15, 2022, but it was not enough for Mr. Proper. He again demanded "access" to the accounts without committing to taking ownership of them.

39. Defendants retained counsel and threatened to sue Erik regarding the status of the accounts. Though Clear still did not promise to take ownership of the accounts, and despite the fact Erik has numerous legal claims against the company, Erik produced financial statements for the business Bank of America, PayPal, and Amazon Pay accounts on April 7.

40. While the parties debated the merchant account issue, Clear continued to refuse to pay Erik what it owes him. After Erik demanded his unpaid salary, commissions, and expenses, Mr. Proper argued that Erik had resigned his employment on December 28, 2021. That was false. Erik had sent Mr. Proper a notice of termination regarding his Virginia apartment, which he had to vacate on account of Clear's failure to pay him.

41. While Mr. Proper claims Erik ceased to be employed by Clear in December 2021, tellingly Erik is still publicly connected with the FREEDOM PHONE brand and the company. As shown below, Erik's image, voice, name, and likeness appear prominently on FREEDOM PHONE's website, which Clear owns and controls.



42. Erik asked Clear to remove his name, image, voice, and likeness from its website, but the company has ignored those requests.

43. Clear's desire to trade on Erik's name is confusing for another reason. After Erik joined Clear, Mr. Proper falsely charged that Erik "stole" his idea for the FREEDOM PHONE, impugning Erik's reputation before his Clear colleagues, and anyone else who would listen to Mr. Proper's accusations.

## COUNT I
## FRAUD
## AGAINST CLEAR AND MICHAEL PROPER

44. Plaintiffs reallege the foregoing.

45. Defendants made numerous representations to Plaintiffs, including:

   a. That Clear was a financially stable business;

   b. That Clear would timely ship FREEDOM PHONES to consumers;

   c. That Clear would pay FREEDOM PHONE marketing partners;

   d. That Mr. Proper had a successful track record as an entrepreneur;

   e. That Mr. Proper had access to a $100 million endowment; and

   f. In the Agreement, that Clear was ████████████████ ████████████████████████████ namely Utah.

46. Defendants' representations were false for the following reasons:

   a. Clear was not and is not financially stable;

   b. Clear did not timely ship FREEDOM PHONES to consumers;

   c. Clear did not pay FREEDOM PHONE marketing partners;

   d. Mr. Proper led failed businesses;

   e. Mr. Proper did not and does not have access to a $100 million endowment; and

   f. Clear ceased to be a corporation in good standing as of June 23, 2021,

more than a month before August 2, 2021 date of the Agreement, and Clear was in a state of administrative dissolution at the time of the Agreement, and the company remains that way today.

47. Defendants' representations were material, since Erik would have not signed the Agreement but for Clear's false representation to the contrary for, among other reasons, the risk of personal liability.

48. Defendants either knew its representations were false at the time or acted recklessly in making the representations.

49. Moreover, based on Clear and Proper's actions and inactions following execution of the Agreement, it is apparent that they never intended to perform their obligations under the Agreement at or before the time it was executed.

50. Defendants made the false representations for the purpose of inducing Plaintiffs to enter the Agreement.

51. Plaintiffs relied upon the representations, not knowing they were false, and executed the Agreement.

52. Plaintiffs have been damaged by Defendants' false representations because, among other things, he incurred damages from the relationship that he would have never incurred had he not executed the Agreement and worked with Clear.

## COUNT II
## BREACH OF CONTRACT
## BREACH OF THE AGREEMENT

53. Plaintiffs reallege the foregoing.

54. The Agreement is a binding contract between Finman LLC and Clear.

55. The Agreement provides the following regarding Clear's assumption of liabilities:



56. Clear breached the Agreement by failing to take on at least the following liabilities:

    a. Ownership and all liabilities associated with the bank and merchant accounts;

    b. Failing to pay at all or otherwise timely pay FREEDOM PHONE marketing partners; and

    c. Failing to fulfill at all or timely fulfill product orders.

57. The Agreement also contains a non-disparagement provision, which bars Clear and Mr. Proper from disparaging Erik. Mr. Proper disparaged Erik by falsely charging that Erik "stole" Mr. Proper's idea for the FREEDOM PHONE.

58. The Agreement also provides that Erik is entitled to a $75 commission for each FREEDOM PHONE sold after August 2, 2021.

59. Clear has failed to pay Erik commissions to which he is entitled.

60. Erik incurred damages on account of Clear's breaches of the Agreement.

## COUNT III
## INDEMNIFICATION

61. Plaintiffs reallege the foregoing.

62. The Agreement is a binding contract between Plaintiffs and Clear.

63. The Agreement provides that Clear is required to ▓▓▓▓ both FPLC and Erik ▓▓▓▓ which it or he ▓▓▓▓

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████

64. As noted above, Clear's representations and warranties contain at the least the failure and inaccuracy that the company was in good standing with the State of Utah, which was false then and false now.

65. Clear otherwise violated the Agreement in at least the following ways:

    a. Failing to timely take ownership of the merchant and bank accounts while saddling Erik with the personal liability for them;

    b. Failing to timely fill and service FREEDOM PHONE orders;

    c. Failing to timely refund FREEDOM PHONE customers as provided by the company's own written return policies;

    d. Failing to pay at all or timely pay FREEDOM PHONE marketing partners, which Erik then had to pay out of his own pocket; and

    e. Failing to ███████████████████████████████████████████

███████████████████████████████████████████████████████

66. The Agreement defines a recoverable ██████ as ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████

67. Erik has incurred at least the following Losses on account of Clear's conduct:

      a.      Damage to his personal credit arising out of Clear's failure to timely take ownership of the bank and merchant accounts;

      b.      Damages in the form of amounts he paid to Clear employees and FREEDOM PHONE marketing partners out of pocket;

      c.      Damages and loss to his reputation on account of Clear's failure to pay FREEDOM PHONE marketing partners;

      d.      Damages and loss to his reputation arising out of Clear's failure to timely fill orders of FREEDOM PHONE and to refund customers their money, including without limitation the impact of the same on Erik's relationship with FREEDOM PHONE marketing partners with respect to any future ventures;

      e.      Loss of future business opportunities; and

      f.      Stress, anxiety, and loss of productive time related to all the failures described above.

68.    FPLC has similarly sustained Losses, including but not limited to, for the reasons described above.

69.    Plaintiffs are entitled to recover these Losses under the Agreement.

## COUNT IV
## BREACH OF CONTRACT
## BREACH OF OFFER LETTER

70.    Erik realleges the foregoing.

71.    The Offer Letter is a binding contract between Erik and Clear.

72.    The Offer Letter provides that Erik is entitled to an annual salary of $240,000 payable bi-monthly, and for a minimum of six months until February 2, 2022.

73.    Beginning in December 2021, Clear failed to pay Erik the salary he is entitled to.

74. Clear's failure to pay Erik his salary is a breach of the Offer Letter.

75. Erik incurred damages on account of Clear's breach, namely lost wages.

## COUNT V
## UTAH WAGE AND HOUR ACT

76. Erik realleges the foregoing.

77. Erik served as Chief Marketing Officer of Clear.

78. Erik is an employee under the Utah Wage and Hour Act for purposes of the Offer Letter.

79. Even though Erik was an employee, Clear did not provide him with health insurance.

80. Clear failed to timely pay Erik his salary and commissions in violation of the Act.

81. Erik is entitled to recover from Clear his lost wages and penalties. Utah Code § 34-28-9.5(3).

## COUNT VI
## UTAH SALES REPRESENTATIVE COMMISSION PAYMENT ACT

82. Erik realleges the foregoing.

83. Erik and Clear are in a "business relationship" under the Act.

84. Erik is a "sales representative" under the Act, if this Court finds that he is not an employee of Clear.

85. Clear failed to pay Erik commissions to which he is entitled.

86. Under the Act, Erik is entitled to collect from Clear up to three times the amount of unpaid commissions, attorney's fees, and costs.

## COUNT VII
## VIOLATION OF RIGHT OF PUBLICITY

87. Erik realleges the foregoing.

88. Utah recognizes a statutory right of publicity.

89. Under Utah law, it is a violation of Erik's right of publicity to, without his consent, publish an advertisement showing he "approves, endorses, has endorsed, or will endorse the specific subject matter of the advertisement." Utah Code § 45-3-3(a).

90. Clear's FREEDOM PHONE website prominently features Erik's name, image, and likeness endorsing the FREEDOM PHONE.

91. Erik asked Clear to remove his image, name, and likeness from its websites, and the company has not done so.

92. Clear's violation of Erik's publicity rights is willful.

93. For violating Erik's right of publicity, he "is entitled to injunctive relief, damages alleged and proved, exemplary damages, and reasonable attorney's fees and costs." *Id.* § 45-3-4.

## COUNT VIII
## DEFAMATION

94. Erik realleges the foregoing.

95. Mr. Proper stated that Erik "stole" Mr. Proper's idea.

96. Mr. Proper's statement regarding Erik's alleged theft was false.

97. Mr. Proper made the statement to third parties.

98. Mr. Proper's statement damaged Erik's reputation, impugning Erik's reputation in his chosen business and trade as an entrepreneur.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiffs respectfully pray that this Court:

A. Order Defendants to take ownership of the merchant and bank accounts as required by the Agreement;

B. Award damages on account of Defendants' fraud;

  C. Order Clear to pay Plaintiffs all of their Losses arising out of both the inaccuracies and falsehoods contained in the representations and warranties of the Agreement and on account of Clear's breach of the Agreement;

  D. Order Defendants to pay Erik his outstanding salary, commissions, and expenses;

  E. Award Erik damages, attorney's fees, and costs for Clear's violation of his statutory right of publicity;

  F. Award Erik damages on account of Mr. Proper's defamatory statements;

  G. Order Mr. Proper to retract and correct his prior defamatory statements;

  H. Enjoin Defendants from violating Erik's statutory right of publicity; and

  I. Order such further relief as the Court deems just and equitable.

Respectfully submitted this the 20th day of April, 2022.

By: */s/ Evan S. Strassberg*
Evan Strassberg
MICHAEL BEST & FRIEDRICH LLP
UT State Bar No. 8279
2750 E. Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Telephone: (801) 833-0500
Facsimile: (801) 931-2500
Email: esstrassberg@michaelbest.com

James R. Lawrence, III
*Pro Hac Vice* admission
ENVISAGE LAW
NC State Bar No. 44,560
2601 Oberlin Road, Suite 100
Raleigh, North Carolina 27608
Telephone: (919) 755-1317
Facsimile: (919) 782-0452
Email: jlawrence@envisage.law

*Attorneys for Plaintiffs*