IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ERIK FINMAN and FREEDOM PHONE LIMITED COMPANY, LLC,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>CLEARCELLULAR, INC. and MICHAEL PROPER,<br><br>Defendants and Counterclaim Plaintiffs. | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION<br><br>Case No. 2:22-cv-00272-JNP-JCB<br><br>District Judge Jill N. Parrish |

This case centers on a business deal between plaintiffs and counterclaim defendants Erik Finman and Freedom Phone Limited Company, LLC (collectively, plaintiffs) and defendants and counterclaim plaintiffs ClearCellular, Inc. and Michael Proper (collectively, defendants). The plaintiffs and the defendants have asserted claims against each other arising from the plaintiffs' sale of the Freedom Phone business to the defendants.

Before the court is Finman's motion for a preliminary injunction based on his claim that the defendants violated his publicity rights under Utah's Abuse of Personal Identity Act (APIA). The court held an evidentiary hearing during which the parties presented live testimony and documents for the court's consideration. Finman seeks an injunction prohibiting the defendants form using a video depicting him promoting the Freedom Phone. He also asks the court to enjoin the defendants from using the term "Finman LLC" on the Freedom Phone website controlled by the defendants. Finman argues that the video and the use of the term "Finman LLC" violate his publicity rights protected by the APIA. Because the court finds that Finman has failed to show a likelihood of success on this claim, the court DENIES the motion for a preliminary injunction.

**FINDINGS OF FACT**

1. Finman started a business to sell cell phones to consumers. He called his product the Freedom Phone, claiming that it would protect customers' free speech and privacy rights. One of the promoted features of the phone was an operating system that would feature an "uncensorable app store" that would not ban applications.

2. The assets of the Freedom Phone business were owned by Finman LLC. Finman owned Finman LLC and used this entity to operate the business.

3. In March 2021, Finman shot a video to promote his new phone (the promotional video). In the video, Finman speaks briefly about his accomplishments. He then claims that the Freedom Phone will allow purchasers to avoid "big tech" censorship and spying and touts the phone's features.

4. Finman began selling the Freedom Phone in July 2021. In conjunction with the public launch of the phone, he also released the video of him promoting the phone on the internet. Finman posted the promotional video on the Freedom Phone website. The promotional video received two million views within 24 hours of its release.

5. Finman successfully convinced many consumers to order the Freedom Phone. But he ran into two problems. First, Finman LLC did not have the infrastructure in place to process the orders placed by consumers or to provide adequate customer support. Second, payment processors were withholding consumer payments from the business. Because of these difficulties, Finman began searching for a business partner.

6. Finman entered into negotiations with ClearCellular, which is owned by Michael Proper, to purchase the Freedom Phone business. In August 2021, Finman LLC executed a contract with ClearCellular labeled as the "Acquisition Agreement." Under the contract,

ClearCellular acquired specific assets of the Freedom Phone business. When the parties signed the Acquisition Agreement, the promotional video was on the Freedom Phone website.

7. Section 2.1 of the Acquisition Agreement stated that the Finman LLC agreed to sell to ClearCellular "all right, title and interest in and to all of [Finman LLC's] Acquisitions (but excluding the Excluded Acquisitions) . . ., including" an enumerated list of specific assets.

8. Subdivision (i) of Section 2.1 lists the following category of specific assets conveyed by the Acquisition Agreement: "all Owned Intellectual Property Rights, including, without limitation, . . . the name 'Finman LLC' as used by the company." The term "Intellectual Property Rights" is defined by the contract to include "rights in copyrightable subject matter," as well as "all other intellectual and industrial property rights of every kind and nature."

9. Section 2.2 of the Acquisition Agreement lists several assets of Finman LLC that were not conveyed to ClearCellular by the agreement. None of the enumerated assets in this section could be interpreted to cover the promotional video or the right to use the name "Finman LLC."

10. Around the same time that Finman LLC and ClearCellular executed the Acquisition Agreement, Finman signed an Offer Letter with ClearCellular. In the Offer Letter, Finman agreed to serve as the Chief Marketing Officer of ClearCellular. In this position, Finman would continue to oversee the marketing of the Freedom Phone on behalf of ClearCellular.

11. From August 2021 to early March 2022, Finman served as ClearCellular's Chief Marketing Officer. In this role, Finman continued to promote the Freedom Phone.

12. After ClearCellular purchased the Freedom Phone business, it continued to use the promotional video on the Freedom Phone website. During his tenure with ClearCellular, Finman did not complain about the company's continued use of the promotional video.

13. ClearCellular ran into a number of difficulties in operating the Freedom Phone business. First, due to a shortage of computer chips and supply chain issues, ClearCellular did not deliver any phones to customers until February 2022. Thus, many customers had to wait months before they received the phones that they had ordered. Second, many customers were dissatisfied with the quality of the phone and its software when they received it. Indeed, many phones were defective.

14. Individuals on twitter and other social media sites began to post negative comments about the Freedom Phone. Due to Finman's role in launching the phone and the promotional video on the Freedom Phone website, many individuals associated their negative views of the Freedom Phone with Finman. For example, one individual posted a link to a negative internet review of the Freedom Phone entitled "Surprise, Erik Finman's 'Freedom Phone' is a scam and a privacy horror."

15. In early March 2022, Finman decided to leave his position with ClearCellular because he was not receiving his agreed-upon salary and because he found the company to be dysfunctional.

16. After Finman quit, ClearCellular added the following tagline to the bottom of the Freedom Phone website: "Freedom Phone provided by Finman LLC a Wyoming Company DBA Freedom Phone."

17. Finman became concerned that his association with the Freedom Phone was harming his reputation. In April 2022, Finman's lawyer contacted ClearCellular and asked it to remove

      the promotional video and any other references to Finman from the Freedom Phone website. ClearCellular refused. However, shortly before the evidentiary hearing on this motion, ClearCellular removed the video from the website. During the hearing, Proper indicated that he believed that he had a right to use the video and implied that he may use it in the future to market the phone.

18. On April 20, 2022, Finman sued ClearCellular and Michael Proper. One of the claims that Finman asserts in this lawsuit is that ClearCellular violated his publicity rights under the APIA by using the promotional video and the "provided by Finman LLC" tagline on the Freedom Phone website.

## ANALYSIS

Before the court is Finman's motion for a preliminary injunction requiring ClearCellular and Michael Proper to remove the promotional video and the Finman LLC tagline from the Freedom Phone website. To obtain a preliminary injunction, the moving party must establish: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *accord Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) ("As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." (Citation omitted)).

Thus, the first step in evaluating a motion for a preliminary injunction is determining whether the plaintiff has clearly shown a substantial likelihood that he or she will ultimately prevail on the claim or claims justifying the requested injunctive relief. Here, the basis for Finman's requested injunction is his publicity rights claim under the APIA, which provides that

> the personal identity of an individual is abused if:
>
> (a) an advertisement is published in which the personal identity of that individual is used in a manner which expresses or implies that the individual approves, endorses, has endorsed, or will endorse the specific subject matter of the advertisement; and
>
> (b) consent has not been obtained for such use from the individual . . . .

UTAH CODE § 45-3-3(1). In order to prevail on a claim based on the APIA, therefore, Finman must prove (1) that ClearCellular used his personal identity to express or imply his endorsement of the Freedom Phone and (2) that he did not consent to allow such use of his identity.

ClearCellular argues that Finman has not proven a likelihood of success on this claim because, through the Acquisition Agreement, ClearCellular obtained the right to use both the promotional video and the "Finman LLC" moniker to market the Freedom Phone. The court first addresses the consent issue for the promotional video. It then turns to the question of whether Finman consented to allow ClearCellular to use the "Finman LLC" name.

I. THE PROMOTIONAL VIDEO

The court concludes that Finman has not clearly shown a likelihood of success on his promotional video publicity rights claim because he consented to allow ClearCellular to use the video. First, Finman allowed his company, Finman LLC, to take title to and use the promotional video to market the Freedom phone. Second, Finman LLC transferred the promotional video to ClearCellular. In section 2.1(i) of the Acquisition Agreement, Finman LLC agreed to transfer to

6

ClearCellular "all Owned Intellectual Property Rights." The contract defined the term "Intellectual Property Rights" to include "rights in copyrightable subject matter," as well as "all other intellectual and industrial property rights of every kind and nature." The promotional video is copyrightable because it is an audiovisual work under copyright law. *See* 17 U.S.C. § 102(a)(6) (extending copyright protections to "motion pictures and other audiovisual works"). Accordingly, under the terms of the Acquisition Agreement, ClearCellular obtained ownership of the promotional video and, necessarily, consent to use the video.

Finman argues that the Acquisition Agreement did not convey rights to the promotional video because Finman LLC did not own the video. But at the hearing on this motion, Finman's attorney conceded that Finman had not produced any evidence that he, and not Finman LLC, owned the video. Indeed, all of the evidence presented to the court indicated that Finman LLC owned all of the assets of the Freedom Phone business, including the promotional video. The parties appear to agree that Finman LLC owned the Freedom Phone website. Because the video was on the website, it stands to reason that Finman LLC also owned the video. Moreover, there was no evidence that Finman ever objected to ClearCellular's use of the promotional video during the time that he worked for the company from August 2021 to March 2022. Had he believed that he personally owned the promotional video and that it had not been transferred to ClearCellular under the terms of the Acquisition Agreement, he likely would have raised his concerns sooner.

In sum, all of the evidence presented to the court indicates that Finman LLC owned all of the assets of the Freedom Phone business—including the promotional video, which was a key component of the initial marketing campaign for the phone. Finman LLC then conveyed the video to ClearCellular through the Acquisition Agreement. Absent any evidence that Finman personally owned the promotional video and had the power to withhold his consent to use the video, the court

finds that he has not clearly shown a substantial likelihood that he will prevail on this publicity rights claim.

## II. THE RIGHT TO USE THE NAME "FINMAN LLC"

The court also finds that ClearCellular had permission to use the name "Finman LLC." The Acquisition Agreement provided that ClearCellular obtained from Finman LLC "the name 'Finman LLC' as used by the Company and all rights that the Company may have to institute or maintain any action to protect the same and recover damages for any infringement thereof." Although Finman acknowledges that his company transferred the right to use the name "Finman LLC" to ClearCellular, he argues that this assignment of rights was accompanied by an important caveat. He asserts that the phrase "as used by the company" modifies the transfer of rights such that ClearCellular obtained the right to use the name "Finman LLC" only to the extent that the company used the name at the time that the Acquisition Agreement was executed. Thus, Finman reads the phrase "as used by the Company" to mean "only as used by the Company prior to the date that that this agreement is signed." Finman contends that because Finman LLC did not use its name on the Freedom Phone website prior to the execution of the Acquisition Agreement, ClearCellular exceeded the scope of its right to use the "Finman LLC" name when it added the disputed tagline to the website.

The court disagrees with Finman's interpretation of the phrase "as used by the Company." Finman impermissibly modifies the phrase by adding a temporal limitation not found in its plain language. The court instead reads the phrase to mean that ClearCellular obtained all the same rights to use the name "Finman LLC" that were held by that entity. This reading is supported by the succeeding language stating that the rights obtained by ClearCellular included "all rights that the Company may have to institute or maintain any action to protect" the Finman LLC name. Under

8

this language, ClearCellular obtained *all* of Finman LLC's rights to sue third parties to protect the moniker. It would be incongruous if ClearCellular were the only party with the ability to sue to protect the name if it did not have full ability to use the name itself.

Accordingly, the court determines that ClearCellular obtained consent to use the "Finman LLC" name. Thus, Finman has failed to show that it will likely prevail on its publicity rights claim related to the Finman LLC tagline.

## CONCLUSION AND ORDER

For the reasons stated above, Finman has not carried his burden to clearly show that he will prevail on his publicity rights claim under the APIA. Accordingly, the court need not address the other three preliminary injunction considerations. Absent a showing of likelihood of success on the merits, the court declines to enter a preliminary injunction prohibiting ClearCellular from using the promotional video or the "Finman LLC" tagline. Finman's motion for a preliminary injunction, ECF No. 15, is DENIED.

DATED August 19, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

9